**The below described is SIGNED.**



**Dated: June 18, 2013**

        **WILLIAM T. THURMAN**
        **U.S. Bankruptcy Judge**



## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**DAVID T. HALES and WENDY H. HALES,**<br><br>              Debtors. | Bankruptcy No. 11-20884<br><br>Chapter 11<br><br>Chief Judge William T. Thurman |

### MEMORANDUM DECISION ON DATE OF VALUATION OF VERNAL PROPERTIES

      The issue presented to the Court is whether the date used in determining the value of real property should be the petition date or the plan confirmation date when the debtor proposes to retain the real property and "cram down" secured claims on the property for purposes of a chapter 11 plan of reorganization. The Court conducted a hearing on February 22, 2013 on the issue of valuation of the real property. Mark S. Middlemas appeared on behalf of HSBC Bank USA National Association as Trustee for PHH Alternative Mortgage Trust Series 2007-3 (the "Creditor"), and John Bagley appeared on behalf of David and Wendy Hales (the "Debtors"). At the conclusion of oral argument on the valuation date issue, the Court made findings of fact and conclusions of law on the record and ruled that in this case, the confirmation date, or a date near

confirmation of the plan of reorganization, was the appropriate date to use for valuation of the Debtors' real property. The Court issued an Order on Combined Valuation Hearing and Confirmation Hearing on March 15, 2013 and reserved the right to issue written findings memorializing its decision.

I.     **JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is properly laid in this Court under 28 U.S.C. § 1408.

II.    **FACTS AND BACKGROUND**

The Debtors filed a voluntary chapter 11 petition for relief on January 25, 2011. On Schedule A, the Debtors listed four apartment buildings, all located in Vernal, Utah (the "Vernal Properties"). Each apartment building contains four apartment units. Schedule A, as originally filed, listed the current value of Debtors' interest in the properties as $0.00. On March 4, 2011, the Debtors filed an Amended Schedule A and listed the current value of the Debtors' interest in the properties as $80,000 for each of the four apartment buildings. In February 2011 and March 2011, the Creditor filed proofs of claim in the amounts of: $218,421.84, $219,026.93, $220,538.71, and $218,799.05 for each of the Vernal Properties.

On July 26, 2011, the Debtors filed a Chapter 11 Plan of Reorganization (the "Plan") and Disclosure Statement. The Plan proposed to "cram down" the Creditor's secured claims on the Vernal Properties to the scheduled value of each Vernal Property as stated in the Plan, or $80,000. The Debtors filed an Amended Plan and Disclosure Statement on August 24, 2012 proposing the same treatment of Creditor's claims on each of the Vernal Properties. On October 1, 2012, the Creditor filed four objections to the Amended Plan and Disclosure Statement, one for each of its

claims on the Vernal Properties. In each Objection, the Creditor questioned the Debtors' scheduled value of $80,000 for each Vernal Property and stated:

> In light of the Creditor's secured claim . . . the Debtors' proffered value seems low and outdated. Therefore, Creditor requests that the Debtors provide a current valuation of the real property or include a provision for the treatment of Class 5 Creditors that indicates that Creditor shall retain its lien until its secured claim is paid in full.

The Debtors filed Amended Plans on October 15, 2012 and October 19, 2012, which proposed the same $80,000 valuation and treatment for each of the Vernal Properties and noted the dispute over valuation of the Vernal Properties. The valuation dispute included a disagreement regarding whether the valuation of the Vernal Properties should be considered as of the petition date or as of the confirmation date. This disagreement was particularly important because the values of the Vernal Properties had risen since the date of the petition. Further, under the Debtors' plan, if the properties were valued lower, the secured claims would be lower and hence, their payments would be less and the unsecured portions could possibly be treated dissimilarly.[1]

At the hearing on approval of the Debtors' Disclosure Statement, the Court set an evidentiary hearing to determine the appropriate value of the Vernal Properties. On December 11, 2012, the Court conducted that evidentiary hearing and heard expert testimony from the Creditor's appraiser and received appraisal reports for each of the four Vernal Properties.

The Creditor's appraisals of the Vernal Properties, dated December 3, 2012, provided separate valuations for each of the properties, ranging from $180,000 to $220,000. The Debtors

---

[1] The Court notes Dill Oil Co. v. Stephens (In re Stephens), issued by the 10th Circuit Court of Appeals on January 15, 2013. That case dealt with the absolute priority rule in chapter 11. It may have had some impact on the strategy of the parties here, but was not argued. Further, the parties subsequently stipulated as to several matters, making further inquiry on the impact of the Stephens decision unnecessary.

intended to present two appraisals that demonstrated the value of one of the four properties. The first appraisal valued that single property as of the petition date, January 25, 2011, at $94,000. The second appraisal valued it as of November 14, 2012 at $210,000. At the conclusion of the Creditor's evidentiary presentation and argument, the Court continued the hearing for the Debtors' presentation and ordered the parties to submit additional briefing on the valuation date issue.

The continued evidentiary hearing was conducted on February 22, 2013. The Court began the hearing with oral argument on the valuation date dispute and subsequently made findings of fact and conclusions of law on the record as to that issue. This memorandum decision constitutes the written memorialization of the Court's findings and conclusions with respect to the valuation date issue.

### III. ANALYSIS

Although the parties originally disagreed regarding the exact value of the Vernal Properties, both parties agreed that the Vernal Properties' value had increased in the two years since the petition was filed. Thus, the date that the Court determines is the appropriate date for valuation of the Vernal Properties significantly affects the amount of the secured claim that the Debtors must pay to the Creditor to retain the collateral under the Plan. The Debtors argued that the value of the Vernal Properties should be determined as of the date of petition and that any increase in value should inure to the benefit of the Debtors. The Creditor argued that a date at or nearer to confirmation, or the effective date of the Plan, is the appropriate date to value the Vernal Properties pursuant to the language of 11 U.S.C. § 506(a) and the confirmation requirements of 11 U.S.C. § 1129.[2]

---

[2] All subsequent chapter and section references herein are contained in Title 11 of the United States Code unless otherwise specified.

A close reading of various statutes gives some direction to the Court on this inquiry. The key provision of the Bankruptcy Code is § 506(a), which reads:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*

§ 506(a)(1) (emphasis added). As cited above, § 506(a) requires the Court to look to the "purpose of the valuation and of the proposed disposition or use of such property" when determining value.

The requirements for confirmation of a chapter 11 plan pursuant to § 1129 provide further direction to the Court on the issue of the valuation date in this case. Section 1129(a)(7)(A), which applies to this case, provides that each class of impaired claims must either accept the plan or receive as much as the claimant would receive if the debtor were liquidated:

> (A) [E]ach holder of a claim or interest of such class—(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, *as of the effective date of the plan*, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.] (emphasis added).

The phrase "effective date of the plan" is also incorporated into §1129(b)(2)(A)(i)(II):

> (A) With respect to a class of secured claims, the plan provides . . . (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, *as of the effective date of the plan*, of at least the value of such holder's interest in the estate's interest in such property. (emphasis added).

5

The above-cited Code provisions support the contention that the value of the Vernal Properties should be determined at or near the time of confirmation. Here, the Debtors' Plan provides that the effective date of the Plan is the confirmation date.

The parties did not cite—and the Court did not find—controlling precedent from our circuit[3] on the valuation date issue. The parties did cite, however, to a plethora of case law on the issue, and the Court's own research also spawned a wide variety of divergent decisions.[4] Depending on the purpose of the valuation, jurisdictions generally choose from four valuation dates: (1) the date of confirmation; (2) the date of the petition; (3) the date of the valuation hearing; or (4) the effective date of the plan. The Court is persuaded by the line of cases holding that the confirmation date, or a date near it, is the appropriate date for determining value of collateral for the purposes of confirmation. See In re Dheming, No. 11-56798, 2013 WL 1195652 (Bankr. N.D. Cal. Mar. 22, 2013), In re Seip, 116 B.R. 709 (Bankr. D. Neb. 1990), and In re Kain, 86 B.R. 506 (Bankr. W.D. Mich. 1988).

The Debtors cite to In re Reddington/Sunarrow Ltd. Partnership as support for their contention that the petition date is the appropriate valuation date in this case. In re Reddington/Sunarrow Ltd. P'ship, 119 B.R. 809 (Bankr. D.N.M. 1990). However, the Court in that case was valuing property for the purposes of determining adequate protection and itself acknowledged that the confirmation date is the appropriate valuation date for purposes of plan confirmation:

---

[3] The 10th Circuit Court of Appeals.

[4] For an expansive list of the decisions that discuss the date of valuation, at least for cases dated prior to 1996, see the In re Wood decision from the Middle District of Pennsylvania. Wood v. LA Bank (In re Wood), 190 B.R. 788, 790-91 (Bankr. M.D. Pa. 1996).

> The Court is aware of the decisions in In re Seip, 116 B.R. 709 (Bankr. D. Neb.1990), and In the Matter of Kain, 86 B.R. 506 (Bankr.W.D. Mich.1988). In both of those cases, the courts decided that the value of the collateral for purposes of confirmation of a plan should be determined as of the date of confirmation. Those courts were correct in their analysis that a value determination for plan confirmation purposes is not the same as a value determination for automatic stay purposes or for determining the allowed amount of a secured claim.

Id. at 812-13. Thus, the In re Reddington/Sunarrow Ltd. Partnership court recognized that the purpose of the valuation has an effect on the date used for valuation. It is distinguishable from the instant case because the Debtors here are seeking to value the Vernal Properties for confirmation purposes.

The Debtors also rely heavily on In re Wood, 190 B.R. 788 (Bankr. M.D. Pa. 1996), in support of using the petition date as the valuation date. There, the court determined that the petition date was the appropriate valuation date when determining value to strip off a junior lien. The debtor's zoning upgrade on her property while the chapter 11 case was pending increased the value of the real property by approximately $20,000. In re Wood, 190 B.R. at 794-95. The court relied upon a totality of the circumstances test and provided a list of factors[5] that are useful in determining the appropriate valuation date for the purposes of valuing a secured claim under § 506(a). Id.

---

[5] In re Wood, 190 B.R. 788, 794-95 (Bankr. M.D. Pa.1996) (holding that factors used in determining the appropriate valuation date include: "(1) the impact of the debtor's efforts on the postpetition change in value; (2) the expectancies of the parties at the time they may have made the loan agreement (if any); (3) the desirability of uniformity; (4) the convenience of administration; (5) the equitable concept that those who bear the risk should benefit from the rise in value; (6) a resulting windfall to any one party should be discouraged; (7) the bankruptcy policy set forth in section 552(b) which extends prepetition liens to postpetition proceeds in certain situations; (8) the bankruptcy policy set forth in 11 U.S.C. § 362(d), which encourages the tendering of adequate protection payments to a creditor holding depreciating collateral; (9) the off-stated policy of bankruptcy to secure the debtor a 'fresh start;' (10) the result of utilizing a specific date of valuation on the bankruptcy itself including that impact upon senior and junior lien creditors; and (11) whether the party benefitting from a delay in valuation has been responsible for that delay").

As with In re Reddington/Sunarrow Ltd. Partnership, this Court concludes that In re Wood is distinguishable. The court in In re Wood found that "it was solely due to the Debtor's efforts that the valuation of the property increased by Twenty Thousand Dollars ($20,000) during the bankruptcy" and that "rewarding the Debtor's postpetition efforts by allowing it to retain the Twenty Thousand Dollars ($20,000) of 'new value' would certainly support the Debtor's 'fresh start.'" In re Wood, 190 B.R. at 794. The Debtors in this case, however, do not contend that the increase in value of the Vernal Properties is due to anything other than a general increase in real estate values. The Debtors also do not contend that they made any specific improvements to the Vernal Properties that increased their market value.

In an unpublished case from the District of Kansas, the court addressed a case with similar facts to the case at hand where the debtor also sought to retain its principal asset. In re El Charro Inc., No. 05-60294, 2007 WL 2174911 (Bankr. D. Kan. July 26, 2007). There, the court conducted an evidentiary hearing on the valuation of the El Charro Restaurant in Dodge City, Kansas. Id. at *1. Confirmation of the chapter 11 plan turned upon the value of the restaurant, as the debtor was seeking to retain the restaurant and the main secured creditor on the property objected to confirmation on that basis. Id. Although In re El Charro did not explicitly address the date of valuation issue, that court provided an analysis of the statutory provisions leading to its conclusion that the value should be determined as of the effective date of the plan, which is helpful in the Court's analysis here:

> Section 506(a) provides that the Bank's allowed secured claim is secured only to the extent of that value. What that value is will drive what the debtor is required to pay the Bank in order to retain the restaurant under § 1129(b)(2)(A). Section 506(a) states: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Debtor proposes to retain and use the property in the implementation of its plan.

Section 1129(b)(2)(A)(i)(II) requires that debtor pay to the Bank a value that, as of the effective date of the plan, equals at least the value of the Bank's collateral.

Id. at *4. Similarly, the Debtors in the present case propose to retain the Vernal Properties for investment purposes, and the value of the Vernal Properties will dictate what the Debtors must pay on the Creditor's secured claims.

To be consistent with the statutory provisions of § 506 and § 1129, the Court determines that the confirmation date, or a date near it, is the appropriate valuation date in this case. Section 506(a)(1) provides that "value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property." The Debtors propose to retain the Vernal Properties as investments, and the purpose of the valuation is for confirmation purposes. Accordingly, §1129's various provisions citing to value as of the "effective date of the plan" are consistent with this result.

**IV.   CONCLUSION**

In this case, the Debtors propose to retain the Vernal Properties and use them in the future as investment properties that will generate rents. Thus, the appropriate date for valuation in this case is a date at or near the date of confirmation to coincide with the purpose of the valuation and the Debtors' proposed use of the property.

_____END OF DOCUMENT_____

oo00–00oo

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION ON DATE OF VALUATION OF VERNAL PROPERTIES** will be effected through the Bankruptcy Noticing Center to each party listed below:

John Bagley
Bagley Law, PC
688 E. Union Square
Sandy, UT 84070
    *Attorney for Debtors*

Mark Middlemas
Lundberg & Associates
3269 South Main Street, Suite 100
Salt Lake City, UT 84115
    *Attorney for Creditor*